FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

2009 OCT 30  PM 3: 34

MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE, FLORIDA

UNITED STATES OF AMERICA

v.

JEFFREY RUBIN

Case No.:    3:09- *cr- 343-J-25 HTS*
Ct. 1:       18 U.S.C. § 371
Forfeiture:  18 U.S.C. § 981(a)(1)(C)
             28 U.S.C. § 2461(c)
             18 U.S.C. § 982(a)(2)(A)

## INFORMATION

The United States Attorney charges:

## COUNT ONE

## CONSPIRACY

### A. Introduction

At all times material herein, unless otherwise specified:

### THE DEFENDANT

1.    JEFFREY RUBIN, a resident of Jacksonville, Florida, was a licensed

real estate agent in the State of Florida.   JEFFREY RUBIN was a sales representative

for American Homebuilders, Inc., a custom home construction company building upper-

end single family homes in the greater Jacksonville, Florida, area.

### CO-CONSPIRATORS

2.    Jean Tan Jones, a resident of Jacksonville, Florida, was a co-conspirator

in this mortgage fraud scheme.  Jean Tan Jones was a licensed real estate agent in the

State of Florida since September 26, 2000, and a licensed real estate broker in the

State of Florida since May 14, 2007. Jean Tan Jones owned and operated First Trust Real Estate, Inc., also known as First Trust Realty.

3.    Marshall Craig Scott, a resident of Jacksonville, Florida, was a co-conspirator in this mortgage fraud scheme. Marshal Craig Scott was a part owner of American Homebuilders, Inc., a custom home construction company building upper-end single family homes in the greater Jacksonville, Florida, area.

4.    Fe V. Tan, a resident of Jacksonville, Florida, was a co-conspirator in this mortgage fraud scheme. Fe V. Tan was a licensed mortgage broker in the State of Florida.

### BACKGROUND

1.    A HUD-1 Settlement Statement ("HUD-1") is a United States Department of Housing and Urban Development form which is universally used in closings of residential properties in the United States. A HUD-1 is used to identify and allocate the various expenses associated with the sale of residential real estate between the buyer and the seller of the property. HUD-1 forms specifically provide a certification that "the HUD-1 Settlement Statement...is a true and accurate statement of all receipts and disbursements made" in the real estate transaction.

2.    A Uniform Residential Loan Application, commonly referred to as a mortgage loan application or a Form 1003 ("Form 1003"), is a universally used mortgage application developed by federal government agencies, and is utilized by lenders in the mortgage loan approval process. The Form 1003 requires the buyer/borrower to submit his/her financial history, including employment information,

2

monthly income, assets and liabilities, and the specific details of the residential real estate transaction.

      3.      Mortgage companies facilitate the mortgage loan process by assembling information and documentation used by financial and lending institutions in connection with financial and lending institutions' loan approval process for residential real estate loans.

      4.      Purchase and Sale Agreements are written contracts used in the sale of real estate and set forth the terms of the real estate transaction, including identifying the property to be sold, the seller of the property, the buyer of the property, the purchase price, and other conditions of the sale.

      5.      The term "closing" is used in the real estate industry to refer to the legal transfer of real estate from seller to buyer.

      6.      The term "lender" is used in this Information to refer to institutions that extended mortgage loans to fund the purchases of properties involved in this mortgage fraud scheme.

## B. Charge

From mid-2006, and continuing thereafter until in or about March, 2008, in Jacksonville, in the Middle District of Florida, and elsewhere,

JEFFREY RUBIN,

the defendant herein, did combine, conspire, and agree with others, to knowingly and willfully devise and intend to devise a scheme and artifice to defraud lenders, as further described below, and for obtaining money or property by means of false and fraudulent

3

pretenses, representations, and promises, and, for the purpose of executing such scheme and artifice and attempting to do so:

1.    knowingly executed and attempted to execute a scheme and artifice to defraud, and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, by utilizing the United States mail and private and commercial interstate carriers, for the purpose of executing such scheme and artifice, in violation of Title 18 United States Code, Section 1341; and

2.    knowingly executed and attempted to execute a scheme and artifice to defraud, and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, by transmitting and causing to be transmitted by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18 United States Code, Section 1343.

## C. Manner and Means

1.    It was part of the conspiracy that the conspirators, would induce prospective home buyers to purchase new, high-end, single family homes from American Homebuilders, Inc., by promising to pay up to $100,000 to the prospective home buyers outside of closing.  These payments would be funded by "rebates" or kickbacks of a portion of the realtor's commission as well as payments from the builder. The financial inducements were not disclosed to the lending institution extending the mortgage(s) on the new home, and were not listed on the HUD-1.

2.    It was further part of the conspiracy that co-conspirators would falsely and fraudulently secure home mortgage loans from lending institutions to fund the purchase of new, upper-end, single family homes by home buyers.

3.    It was further part of the conspiracy that Jean Tan Jones would make an unlawful agreement with Marshall Craig Scott and JEFFREY RUBIN to trick and deceive mortgage lenders, including federally insured banks and other mortgage lenders, by various means, including by falsely and fraudulently reflecting significantly inflated sale prices of new homes on Purchase and Sale Agreements.

4.    It was further part of the conspiracy that the JEFFREY RUBIN and co-conspirators would falsely and fraudulently reflect significantly inflated sales prices (more than the actual sales price the builder was receiving for the home) of homes on Purchase and Sale Agreements in order to cause lending institutions funding mortgages on new home sales to lend more money on home mortgages than the lending institution would have loaned on the homes had the lending institutions been advised of the true sales price of the new homes, in order to corruptly kickback tens of thousands of dollars to home buyers.

5.    It was further part of the conspiracy that Jean Tan Jones, with the full knowledge and agreement of co-conspirators, would falsely and fraudulently cause substantially inflated sales commissions, up to 19.8% of the fraudulently inflated sales price of the homes, to be included as part of new home Purchase and Sale Agreements,  which was paid to Jean Tan Jones' real estate company, First Trust Realty, Inc., as part of closing.

5

6.    It was further part of the conspiracy that Jean Tan Jones would, after closing and without disclosing the payment on the HUD-1, corruptly pay home buyers a portion of the funds paid to Jean Tan Jones' real estate company at closing, which was fraudulently reflected on the HUD-1 as the real estate sales commission.

7.    It was further part of the conspiracy that conspirators would cause American Homebuilders, Inc. to corruptly receive additional funds at closing, concealed as funds from the sale of new homes, and thereafter, Marshall Craig Scott would write a check to the home buyer, which payment was not disclosed to the lending institution or reflected on the HUD-1.

8.    It was further part of the conspiracy that over the course of time, the scheme was slightly modified by conspirators, whereby instead of Marshall Craig Scott writing a check outside of closing to the home buyer, Marshall Craig Scott would require the Jean Tan Jones to serve as a conduit for its kickback to the buyer.

9.    It was further part of the conspiracy that co-conspirators would, in connection with applications for mortgage loans from lending institutions, falsely and fraudulently submit uniform residential loan applications (Form 1003), containing material misrepresentations, including overstating buyer/borrower monthly incomes and misrepresenting that the property would be used by the buyer/borrow as his/her primary residence.

10.    It was further part of the conspiracy that co-conspirators would, in connection with securing mortgage loans from defrauded lending institutions, cause the defrauded lending  institutions to electronically transmit by wire, in interstate commerce,

6

funds from the lending institutions' accounts to the escrow accounts of Jacksonville, Florida, title companies closing the real estate transaction.

11.    It was further part of the conspiracy that co-conspirators would, in connection with securing mortgage loans from defrauded lending institutions, cause the Jacksonville, Florida, title company closing the loans, to mail, by commercial interstate carriers, closing documentation regarding the fraudulently secured loan to the lending institution and other interested parties.

12.    It was further part of the conspiracy that JEFFREY RUBIN would be paid by Jean Tan Jones for his assistance in acting as a sales representative in connection with new homes sold as part of this conspiracy, but which new homes were in subdivisions for which JEFFREY RUBIN would not be paid by American Homebuilders, Inc., which payments totaled approximately $39,000.

13.    It was further part of the conspiracy that the conspirators would take actions necessary to hide and conceal the existence of the conspiracy.

### D. Overt Acts

In furtherance of the conspiracy and to affect the objects thereof, the following overt acts, among others, were committed in the Middle District of Florida and elsewhere:

**5282 Clapboard Creek Drive, Jacksonville, Florida, Lot 87**

1.    In or about mid-2006, JEFFREY RUBIN, Jean Tan Jones, and an owner and operator of a custom home builder based in Jacksonville, Florida, came to an unlawful agreement to induce potential home buyers to purchase new custom homes

for inflated prices by promising to "rebate" or kickback funds to buyers outside of
closing, without disclosing the financial transaction to the lending institution extending a
mortgage on the new home, and without accounting for the payment to the
buyer/borrower on the HUD-1.

2.    On or about October 26, 2006, conspirators created a Purchase and
Sale Agreement for a new custom home located on lot 87 in the Tidewater subdivision
in Jacksonville, Florida, which falsely and fraudulently reflected that: (1) the total
purchase price of the home was $574,000, which was an inflated amount from the true
sales price of the home; and (2) the real estate sales commission was 10% of the
purchase price of the home, when in reality, a substantial portion of the real estate
commission was actually to be paid by Jean Tan Jones to the home buyer as an
inducement to purchase the property and the amount of the real estate sales
commission was merely being used as a mechanism to trick the lending institution into
funding money that would be "rebated" to the buyer/borrower.

3.    In or about October, 2006, in connection with securing a mortgage loan
for the buyer of a  new custom home located on lot 87 in the Tidewater subdivision in
Jacksonville, Florida, a co-conspirator mortgage broker caused materially false and
fraudulent information to be included on a Form 1003 loan application, including false
information regarding the borrower's monthly income.

4.    On or about November 14, 2006, Marshall Craig Scott created a false and
fraudulent Change Order regarding the home on lot 87, in the Tidewater subdivision in
Jacksonville, Florida, falsely reflecting allowances for appliances, fencing, and
upgraded flooring in the amount of $20,086, which Change Order was being utilized by

the conspirators to fraudulently increase the amount of the mortgage the lending institution would fund for the purchase of the property.

5.    On or about November 22, 2006, conspirators caused the closing of property located at 5282 Clapboard Creek Drive, Jacksonville, Florida, to be consummated, which resulted in Amnet Mortgage, Inc. being deceived into funding a first and second mortgage for the purchase of said property in the total amount of approximately $569,198.96.

6.    On or about November 22, 2006, conspirators caused Amnet Mortgage, Inc., d/b/a American Mortgage Network of Florida, to transmit by interstate wire, funds in the approximate amount of $459,200 (first mortgage), to an escrow account for Southern Title Holding Company, LLC, in Jacksonville, Florida.

7.    On or about November 22, 2006, conspirators caused Amnet Mortgage, Inc., d/b/a American Mortgage Network of Florida, to transmit by interstate wire, funds in the approximate amount of $114,800 (second mortgage), to an escrow account for Southern Title Holding Company, LLC, in Jacksonville, Florida.

8.    On or about November 22, 2006, in connection with the closing of property located at 5282 Clapboard Creek Drive, Jacksonville, Florida, Southern Title Holding Company, LLC, located at 3943 Baymeadows Road, Jacksonville, Florida, issued a check in the amount of $57,400 to Jean Tan Jones' real estate business, First Trust Realty, which according to the HUD-1 prepared for that transaction, represented a sales/broker commission.

9.    On or about November 29, 2006, Jean Tan Jones issued a check in the amount of $32,100 to the buyer of 5282 Clapboard Creek Drive, Jacksonville, Florida,

drawn on the defendant's corporate account with First Trust Realty, which funds represented a kickback to the buyer of 5282 Clapboard Creek Drive, Jacksonville, Florida, from the inflated real estate sales commission received by First Trust Realty during the property's closing on November 22, 2006.

      10.    On or about November 22, 2006, a co-conspirator and part-owner of a Jacksonville, Florida, custom home building corporation that constructed and sold 5282 Clapboard Creek Drive, Jacksonville, Florida, to an individual buyer on November 22, 2006, issued a check in the amount of $20,080, drawn on the home builder's corporate account, to the home buyer, which payment was made outside of closing, not disclosed to the lending institution funding the mortgage, and not reflected on the HUD-1.

      11.    On or about November 27, 2006, conspirators caused Southern Title Holding Company, LLC, 3943 Baymeadows Road, Jacksonville, Florida, to mail, by interstate commercial carrier, that is, Federal Express, closing documentation for the closing of 5282 Clapboard Creek Drive, Jacksonville, Florida, on November 22, 2006, to be delivered to American Mortgage Network, Tampa, Florida.

**5137 Creek Crossing Drive, Jacksonville, Florida, Lot 220**

      12.    On or about February 6, 2007, conspirators created a Purchase and Sale Agreement for a new custom home located on lot 220 in the Tidewater subdivision, 5137 Creek Crossing Drive, Jacksonville, Florida, which falsely and fraudulently reflected that: (1) the total purchase price of the home was $689,900, which was an inflated amount from the true sales price of the home; and (2) the real estate sales commission was 20% of the purchase price of the home, when in reality, a substantial portion of the real estate commission was actually being paid by the

10

defendant to the home buyer as an inducement to purchase the property and the inflated real estate sales commission was merely a mechanism to trick the lending institution into funding money that would be paid as a "kickback" to the buyer/borrower.

13.     In or about April, 2007, in connection with securing a mortgage loan for the buyer of a  new custom home located on lot 220 in the Tidewater subdivision, 5137 Creek Crossing Drive, Jacksonville, Florida, a conspirator mortgage broker caused materially false and fraudulent information to be included on a Form 1003 loan application, including a false claim that the borrower would utilize the property as his primary residence.

14.     On or about April 19, 2007, conspirators caused the closing of the property located at 5137 Creek Crossing Drive, Jacksonville, Florida, to be consummated, which resulted in American Brokers Conduit, Melville, New York, being deceived into funding a first and second mortgage for the purchase of said property in the total amount of approximately $648,298.

15.     On or about April 19, 2007, conspirators caused American Brokers Conduit, Melville, New York, to transmit by interstate wire, funds in the amount of approximately $520,000 (first mortgage), to an escrow account for Southern Title Holding Company, LLC, in Jacksonville, Florida.

16.     On or about April 19, 2007, conspirators caused  American Brokers Conduit, Melville, New York, to transmit by interstate wire, funds in the amount of approximately $128,298 (second mortgage), to an escrow account for Southern Title Holding Company, LLC, in Jacksonville, Florida.

17.    On or about April 19, 2007, in connection with the closing of property located at 5137 Creek Crossing Drive, Jacksonville, Florida, Southern Title Holding Company, LLC, located at 3943 Baymeadows Road, Jacksonville, Florida, issued a check in the amount of $129,050 to Jean Tan Jones real estate business, First Trust Realty, which according to the HUD-1 prepared for that transaction, represented a sales/broker commission.

18.    On or about April 24, 2007, Jean Tan Jones issued a check in the amount of $100,000 to the buyer of 5137 Creek Crossing Drive, Jacksonville, Florida, drawn on the defendant's corporate account, First Trust Realty, which funds represented a kickback to the buyer of 5137 Creek Crossing Drive, Jacksonville, Florida, from the real estate sales commission received by First Trust Realty during the property's closing on April 19, 2007.

**12517 Dewhurst Circle, Jacksonville, Florida, Lot 80**

19.    On or about June 6, 2007, conspirators created a Purchase and Sale Agreement for a new custom home located on lot 80 in the Villages of Westport subdivision in Jacksonville, Florida, which falsely and fraudulently reflected that: (1) the total purchase price of the home was $350,000, which was an inflated amount from the true sales price of the home; and (2) the real estate sales commission was 19% of the purchase price of the home, when in reality, a substantial portion of the real estate commission was actually to be paid by Jean Tan Jones to the home buyer as an inducement to purchase the property and the amount of the real estate sales commission was merely a mechanism to trick the lending institution into funding money that would be "rebated" to the buyer/borrower.

12

20.   On or about July 6, 2007, conspirators caused the closing property located at 12517 Dewhurst Circle, Jacksonville, Florida, to be consummated, which resulted in Amnet Mortgage, Inc. being deceived into funding a mortgage for the purchase of said property in the approximate amount of $335,000.

21.   On or about July 6, 2007, conspirators caused Amnet Mortgage, Inc., d/b/a American Mortgage Network of Florida, to transmit by interstate wire, funds in the amount of $336,298, to an escrow account for Southern Title Holding Company, LLC, in Jacksonville, Florida.

22.   On or about July 9, 2007, in connection with the closing of property located at 12517 Dewhurst Circle, Jacksonville, Florida, Southern Title Holding Company, LLC, located at 3943 Baymeadows Road, Jacksonville, Florida, issued a check in the amount of $64,045 to Jean Tan Jones' real estate business, First Trust Realty, which according to the HUD-1 prepared for that transaction, represented a sales/broker commission.

23.   On or about July 10, 2007, Jean Tan Jones issued a check in the amount of $41,500 to the buyer of 12517 Dewhurst Circle, Jacksonville, Florida, drawn on Jean Tan Jones' corporate account, First Trust Realty, which funds represented a kickback to the buyer of 12517 Dewhurst Circle, Jacksonville, Florida, from the real estate sales commission received by First Trust Realty during the property's closing on July 6, 2007.

All in violation of Title 18, United States Code, Section 371.

13

## FORFEITURES

1.      The allegations contained in Count One of this Information are hereby

realleged and incorporated by reference for the purpose of alleging forfeitures pursuant

to the provisions of Title 18, United States Code, Section 981(a)(1)(C) and Title 28,

United States Code, Section 2461(c), and Title 18, United States Code, Section

982(a)(2)(A).

2.      From her engagement in the violations alleged in Count One of this

Information, punishable by imprisonment for more than one year, the defendant

### JEFFREY RUBIN,

shall forfeit to the United States of America, pursuant to Title 18, United States Code,

Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), and Title 18,

United States Code, Section 982(a)(2)(A), all of her interest in any property constituting

or derived from proceeds obtained directly or indirectly as a result of the said violations,

including but not limited to, a sum of money equal to $1,000,000.00 in United States

currency, representing the amount of proceeds obtained as a result of the offenses,

Title 18, United States Code, Section 371, for violations of Title 18, United States Code,

Sections 1341 and 1343.

3.      If any of the property described above, as a result of any

act or omission of the defendant:

    a.      cannot be located upon the exercise of due diligence;

    b.      has been transferred or sold to, or deposited with, a third party;

    c.      has been placed beyond the jurisdiction of the court;

    d.      has been substantially diminished in value; or

      e.    has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property under

the provisions of Title 21, United States Code, Section 853(p), and as incorporated by

Title 28, United States Code, Section 2461(c), and Title 18, United States Code,

Section 982(b)(1).


A. BRIAN ALBRITTON
United States Attorney


By: _____
    MARK B. DEVEREAUX
    Assistant United States Attorney


By: _____
    MAC D. HEAVENER, III
    Assistant United States Attorney
    Deputy Chief, Jacksonville Division